UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

X----------------------------------------------------------

ATLAS SHIPPING A/S,

                Plaintiff,        :    08 Civ.

         - against -       :    ECF CASE

EURO-SCRAP ALLIANCE BV,

                Defendant.

X----------------------------------------------------------

**VERIFIED COMPLAINT**

Plaintiff, ATLAS SHIPPING A/S ("Plaintiff"), by and through its attorneys, Lennon,
Murphy & Lennon, LLC, as and for its Verified Complaint against the Defendant, EURO-
SCRAP ALLIANCE BV (hereinafter referred to as "Defendant"), alleges, upon information and
belief, as follows:

    1.     This is an admiralty and maritime claim within the meaning of Rule 9(h) of the
Federal Rules of Civil Procedure and 28 United States Code § 1333. Jurisdiction over this
matter is also present pursuant to the Federal Arbitration Act, 9 United States Code § 1 *et seq.*,
and this Court's federal question jurisdiction, 28 United States Code § 1331.

    2.     At all times material to this action, Plaintiff was, and still is, a foreign corporation,
or other business entity organized and existing under foreign law with a principal place of
business in Copenhagen, Denmark.

    3.     Upon information and belief, Defendant was, and still is, a foreign corporation, or
other business entity organized and existing under foreign law with a principal place of business
in s'Gravendeel, Netherlands.

RECEIVED
JAN 11 2005
U.S.D.C. S.D.N.Y.
CASHIERS

JUDGE PRESKA

08 CV 00228

2

4.      By a charter party entered into on August 16, 2007 on the GENCON 94 charter party form, Plaintiff chartered to Defendant the M/V ARTEMIDA for a carriage of scrap steel from Hamburg to Iskenderun. *See charter party attached as Exhibit 1.*

5.      In the performance of the aforesaid voyage, there accrued charges for freight and demurrage for the Vessel. While Defendant effected partial payment to Plaintiff, in breach of the charter party Defendant failed to pay the balance owing to Plaintiff despite due demand.

6.      Specifically, pursuant to the Freight Recap dated November 23, 2007, Defendant has illegally withheld payment of $519,616.50, of which $219,615.00 is undisputed freight earned by Plaintiff that Defendant promised to pay and $300,001.50 is demurrage incurred as a result of a six day and eighteen hour delay at the discharge port of Iskenderun for which Defendant is liable. *See Freight Recap attached as Exhibit 2.*

7.      Pursuant to the charter party, all disputes were to be submitted to arbitration in London with English Law to apply. Plaintiff is preparing to commence arbitration against Defendant in London.

8.      Interest, costs and attorneys' fees are routinely awarded to the prevailing party under English Law. As best as can now be estimated, Plaintiff expects to recover the following amounts in the London arbitration:

|  |  |  |
|---|---|---|
| A. | Principal claim: | $519,616.50; |
| B. | Interest on principal claim at 7% compounded quarterly for two years: | $77,361.43 |
| C. | Attorneys' fees and costs of arbitration: | $78,523.52 |
| **Total:** |  | **$675,501.45.** |

9.      The Defendant cannot be found within this District within the meaning of

Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, but, upon information and belief, Defendant has, or will have during the pendency of this action, assets within this District and subject to the jurisdiction of this Court, held in the hands of one or more garnishees which are believed to be due and owing to the Defendant.

10.     The Plaintiff seeks an order from this court directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, and also pursuant to the United States Arbitration Act, 9 U.S.C. §§ 1 and 8, attaching, *inter alia*, any assets of the Defendant held by the aforesaid garnishee for the purpose of obtaining personal jurisdiction over the Defendant, and to secure the Plaintiff's claims as described above.

**WHEREFORE**, Plaintiff prays:

A.     That process in due form of law issue against the Defendant, citing it to appear and answer under oath all and singular the matters alleged in the Verified Complaint;

B.     That the Court retain jurisdiction to compel the Defendant to arbitrate in accordance with the United States Arbitration Act, 9 U.S.C. § 1 *et seq.*;

C.     That since the Defendant cannot be found within this District pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, this Court issue an Order directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, also pursuant to the United States Arbitration Act, 9 U.S.C. §§ 1 and 8, attaching all goods, chattels, credits, letters of credit, bills of lading, effects, debts and monies, tangible or intangible, or any other funds held by any garnishee within the District which are due and owing to the Defendant,

in the amount of $675,501.45 calculated to date to secure the Plaintiff's claims, and that all

persons claiming any interest in the same be cited to appear and pursuant to Supplemental

Admiralty Rule B answer the matters alleged in the Complaint;

D.      That this Court recognize and confirm any arbitration award(s) or judgment(s)

rendered on the claims set forth herein as a Judgment of this Court

E.      That this Court retain jurisdiction over this matter through the entry of any

judgment or award associated with any of the claims currently pending, or which may be

initiated in the future, including any appeals thereof;

F.      That this Court award Plaintiff its attorney's fees and costs of this action; and

G.      That the Plaintiff have such other, further and different relief as the Court

may deem just and proper.

Dated: January 8, 2008
       New York, NY

                                        The Plaintiff,
                                        ATLAS SHIPPING A/S,

                              By:   _____
                                        Charles E. Murphy
                                        LENNON, MURPHY & LENNON, LLC
                                        The Gray Bar Building
                                        420 Lexington Ave., Suite 300
                                        New York, NY 10170
                                        (212) 490-6050 – phone
                                        (212) 490-6070 – fax
                                        cem@lenmur.com

**ATTORNEY'S VERIFICATION**

State of New York    )
                     )    ss.:    New York City
County of New York   )

1.     My name is Charles E. Murphy.

2.     I am over 18 years of age, of sound mind, capable of making this Verification, and fully competent to testify to all matters stated herein.

3.     I am an attorney in the firm of Lennon, Murphy & Lennon, LLC, attorneys for the Plaintiff.

4.     I have read the foregoing Verified Complaint and know the contents thereof and believe the same to be true and accurate to the best of my knowledge, information and belief.

5.     The reason why this Verification is being made by the deponent and not by the Plaintiff is that the Plaintiff is a business organization with no officers or directors now within this District.

6.     The source of my knowledge and the grounds for my belief are the statements made, and the documents and information received from, the Plaintiff and agents and/or representatives of the Plaintiff.

7.     I am authorized to make this Verification on behalf of the Plaintiff.

Dated:     January 8, 2008
        New York, NY

Charles E. Murphy

Exhibit 1

This document is a computer generated GENCON 1994 form printed by authority of BIMCO. Any insertion or deletion to the form must be clearly visible. In the event of any modification made to the pre-printed text of this document which is not clearly visible, the text of the original BIMCO approved document shall apply. BIMCO assumes no responsibility for any loss, damage or expense as a result of discrepancies between the original BIMCO approved document and this computer generated document.

Copyright, published by The Baltic and International Maritime Council (BIMCO), Copenhagen

Printed by BIMCO's idea

RECOMMENDED
THE BALTIC AND INTERNATIONAL MARITIME COUNCIL
UNIFORM GENERAL CHARTER (AS REVISED 1922, 1976 and 1994)
(To be used for trades for which no specially approved form is in force)

CODE NAME: "GENCON"    Part I

| | |
|---|---|
| 1. Shipbroker<br><br>M.K. Shipping ApS<br>Kildeassen 14<br>DK - 2840 Holte<br>www.mkshipping.dk | 2. Place and Date<br><br>Copenhagen, the 16th august, 2007 |
| 3. Owners/Place of business (Cl. 1)<br><br>Atlas Shipping A/S<br>Sundkaj 11<br>DK - 2100 Copenhagen Ø | 4. Charterers/Place of business (Cl. 1)<br><br>Euro-Scrap Alliance BV<br>NL - 's-Gravendeel |
| 5. Vessel's name (Cl. 1)<br><br>mv "ARTEMIDA" | 6. GT/NT (Cl. 1)<br><br>See cl. 38 |
| 7. DWT all told on summer load line in metric tons (abt.) (Cl. 1)<br><br>See cl. 38 | 8. Present position (Cl. 1) |
| 9. Expected ready to load (abt.) (Cl. 1)<br><br>17th august, 2007 | |
| 10. Loading port or place (Cl. 1)<br><br>Hamburg 1 good safe berth, always afloat | 11. Discharging port or place (Cl. 1)<br><br>Iskenderun 1 good safe berth, always afloat |

12. Cargo (also state quantity and margin in Owners' option, if agreed; if full and complete cargo not agreed state "part cargo") (Cl. 1)

A full and complete cargo of steelscrap (HMS 1+2) stowage factor max 55 cbft excluding motorblocks/turnings, harmless none dangerous, none oily, no heavy pieces, upto max permissible draft at Hamburg, chrts guarantee 8,5m bw estimate 27,500/28,000 ts depending on bunkers)

| | |
|---|---|
| 13. Freight rate (also state whether freight prepaid or payable on delivery) (Cl. 4)<br><br>USD 52,00 per metric tons intaken FIOS | 14. Freight payment (state currency and method of payment; also beneficiary and bank account) (Cl. 4)<br><br>See Clause 47 |
| 15. State if vessel's cargo handling gear shall not be used (Cl. 5) | 16. Laytime (if separate laytime for load. and disch. is agreed, fill a) and b). If total laytime for load. and disch., fill in c) only) (Cl. 6) |
| | (a) Laytime for loading<br>7,000 mtons sshinc incl nor |
| | (b) Laytime for discharging<br>6,500 mtons sshinc incl nor |
| 17. Shippers/Place of business (Cl. 6) | (c) Total laytime for loading and discharging |
| 18. Agents (loading) (Cl. 6)<br><br>Schiffahrtskontor Detra GmbH & Co KG, Hamburg | |
| 19. Agents (discharging) (Cl. 6)<br><br>Ektrans, Iskenderun | |
| 20. Demurrage rate and manner payable (loading and discharging) (Cl. 7)<br><br>USD 45,000 per day/pro rata, half despatch both ends | 21. Cancelling date (Cl. 9)<br><br>24th august, 2007 |
| 22. General Average to be adjusted at (Cl. 12)<br><br>London | |
| 23. Freight Tax (state if for the Owners' account) (Cl. 13 (c)) | 24. Brokerage commission and to whom payable (Cl. 15)<br><br>5% |
| 25. Law and Arbitration (state 19 (a), 19 (b) or 19 (c) of Cl. 19; if 19 (c) agreed also state Place of Arbitration) (if not filled in 19 (a) shall apply) (Cl. 19)<br><br>London | 26. Additional clauses covering special provisions, if agreed<br><br>Clauses 20-50 both included |
| 18(a) State maximum amount for small claims/shortened arbitration (Cl. 19)<br><br>USD 50,000 | |

It is mutually agreed that this Contract shall be performed subject to the conditions contained in this Charter Party which shall include Part I as well as Part II. In the event of a conflict of conditions, the provisions of Part I shall prevail over those of Part II to the extent of such conflict.

| Signature (Owners) | Signature (Charterers) |
| --- | --- |
| Atlas Shipping A/S | Euro-Scrap Alliance B.V.<br>S'Gravendeel |

# PART II

## "Gencon" Charter (As Revised 1922, 1976 and 1994)

**1.** It is agreed between the party mentioned in Box 3 as the Owners of the Vessel named in Box 5, of the GT/NT indicated in Box 6 and carrying about the number of metric tons of deadweight capacity all told on summer loadline stated in Box 7, now in position as stated in Box 8 and expected ready to load under this Charter Party about the date indicated in Box 9, and the party mentioned as the Charterers in Box 4 that:

The said Vessel shall, as soon as her prior commitments have been completed, proceed to the loading port(s) or place(s) stated in Box 10 or so near thereto as she may safely get and lie always afloat, and there load a full and complete cargo ~~(if shipment of deck cargo agreed same to be at the Charterers' risk and responsibility)~~ as stated in Box 12, which the Charterers bind themselves to ship, and being so loaded the Vessel shall proceed to the discharging port(s) or place(s) stated in Box 11 as ordered on signing Bills of Lading, or so near thereto as she may safely get and lie always afloat, and there deliver the cargo.

**2. Owners' Responsibility Clause**

The Owners are to be responsible for loss of or damage to the goods or for delay in delivery of the goods only in case the loss, damage or delay has been caused by personal want of due diligence on the part of the Owners or their Manager to make the Vessel in all respects seaworthy and to secure that she is properly manned, equipped and supplied, or by the personal act or default of the Owners or their Manager.

~~And the Owners are not responsible for loss, damage or delay arising from any other cause whatsoever, even from the neglect or default of the Master or crew or some other person employed by the Owners on board or ashore for whose acts they would, but for this Clause, be responsible, or from unseaworthiness of the Vessel on loading or commencement of the voyage or at any time whatsoever.~~

**3. Deviation Clause**

The Vessel has liberty to call at any port or ports in any order, for any purpose, to sail without pilots, to tow and/or assist Vessels in all situations, and also to deviate for the purpose of saving life and/or property.

**4. Payment of Freight**

(a) The freight at the rate stated in Box 13 shall be paid in cash calculated on the intaken quantity of cargo. Freight deemed earned on cargo being loaded, discountless, non-returnable, vessel and/or cargo lost/not lost.

~~(b) *Prepaid*. If according to Box 13 freight is to be paid on shipment, it shall be deemed earned and non-returnable, Vessel and/or cargo lost or not lost. Neither the Owners nor their agents shall be required to sign or endorse bills of lading showing freight prepaid unless the freight due to the Owners has actually been paid.~~

~~(c) *On delivery*. If according to Box 13 freight, or part thereof, is payable at destination it shall not be deemed earned until the cargo is thus delivered. Notwithstanding the provisions under (a), if freight or part thereof is payable on delivery of the cargo the Charterers shall have the option of paying the freight on delivered weight/quantity provided such option is declared before breaking bulk and the weight/quantity can be ascertained by official weighing machine, joint draft survey or tally.~~

~~Cash for Vessel's ordinary disbursements at the port of loading to be advanced by the Charterers, if required, at highest current rate of exchange, subject to two (2) per cent to cover insurance and other expenses.~~

**5. Loading/Discharging**

(a) *Costs/Risks*

The cargo shall be brought into the holds, loaded, stowed and/or trimmed, ~~tallied, lashed and/or secured~~ and taken from the holds and discharged by the Charterers, free of any risk, liability and expense whatsoever to the Owners. ~~The Charterers shall provide and lay all dunnage material as required for the proper stowage and protection of the cargo on board, the Owners allowing the use of all dunnage available on board. The Charterers shall be responsible for and pay the cost of removing their dunnage after discharge of the cargo under this Charter Party and time to count until dunnage has been removed.~~

~~(b) *Cargo Handling Gear*~~

~~Unless the Vessel is gearless or unless it has been agreed between the parties that the Vessel's gear shall not be used and stated as such in Box 15, the Owners shall throughout the duration of loading/discharging give free use of the Vessel's cargo handling gear and of sufficient motive power to operate all such cargo handling gear. All such equipment to be in good working order. Unless caused by negligence of the stevedores, time lost by breakdown of the Vessel's cargo handling gear or motive power - pro rata the total number of cranes/winches required at that time for the loading/discharging of cargo under this Charter Party - shall not count as laytime or time on demurrage.~~

~~On request the Owners shall provide free of charge cranemen/winchmen from the crew to operate the Vessel's cargo handling gear, unless local regulations prohibit this, in which latter event shore labourers shall be for the account of the Charterers. Cranemen/winchmen shall be under the Charterers' risk and responsibility and as stevedores to be deemed as their servants but shall always work under the supervision of the Master.~~

~~(c) *Stevedore Damage*~~

~~The Charterers shall be responsible for damage (beyond ordinary wear and tear) to any part of the Vessel caused by Stevedores. Such damage shall be notified as soon as reasonably possible by the Master to the Charterers or their agents and to their Stevedores, failing which the Charterers shall not be held responsible. The Master shall endeavour to obtain the Stevedores' written acknowledgement of liability.~~

~~The Charterers are obliged to repair any stevedore damage prior to completion of the voyage, but must repair stevedore damage affecting the Vessel's seaworthiness or class before the Vessel sails from the port where such damage was caused or found. All additional expenses incurred shall be for the account of the Charterers and any time lost shall be for the account of and shall be paid to the Owners by the Charterers at the demurrage rate.~~

**6. Laytime**

* (a) *Separate laytime for loading and discharging*

The cargo shall be loaded within the number of running days/hours as indicated in Box 16, weather permitting, Sundays and holidays excepted, ~~unless used, in which event time used shall count.~~

The cargo shall be discharged within the number of running days/hours as indicated in Box 16, weather permitting, Sundays and holidays ~~excepted,~~ included ~~unless used, in which event time used shall count.~~

~~* (b) *Total laytime for loading and discharging*~~

~~The cargo shall be loaded and discharged within the number of total running days/hours as indicated in Box 16, weather permitting, Sundays and holidays excepted, unless used, in which event time used shall count.~~

~~(c) *Commencement of laytime (loading and discharging)*~~

Laytime for loading ~~and discharging~~ shall commence at 13.00 hours, if notice of readiness is given up to and including 12.00 hours, and at 06.00 hours next working day if notice given during office hours after 12.00 hours. Notice of readiness at loading port to be given to the Shippers named in Box 17 or if not named, to the Charterers or their agents named in Box 18. ~~Notice of readiness at the discharging port to be given to the Receivers or, if not known, to the Charterers or their agents named in Box 19.~~

If the loading/discharging berth is not available on the Vessel's arrival at or off the port of loading/discharging, the Vessel shall be entitled to give notice of readiness within ordinary office hours on arrival there, whether in free pratique or not, whether customs cleared or not. Laytime or time on demurrage shall then count as if she were in berth and in all respects ready for loading/discharging provided that the Master warrants that she is in fact ready in all respects. Time used in moving from the place of waiting to the loading/discharging berth shall not count as laytime.

If, after inspection, the Vessel is found not to be ready in all respects to load/discharge time lost after the discovery thereof until the Vessel is again ready to load/discharge shall not count as laytime.

Time used before commencement of laytime shall count.

* *Indicate alternative (a) or (b) as agreed, in Box 16.*

**7. Demurrage**

Demurrage at the loading and discharging port is payable by the Charterers at the rate stated in Box 20 in the manner stated in Box 20 per day or pro rata for ~~any part of a day. Demurrage shall fall due day by day and shall be payable upon receipt of the Owners' invoice.~~

~~In the event the demurrage is not paid in accordance with the above, the Owners shall give the Charterers 96 running hours written notice to rectify the failure. If the demurrage is not paid at the expiration of this time limit and if the vessel is in or at the loading port, the Owners are entitled at any time to terminate the Charter Party and claim damages for any losses caused thereby.~~

**8. Lien Clause**

The Owners shall have a lien on the cargo and on all sub-freights payable in respect of the cargo, for freight, deadfreight, demurrage, claims for damages and for all other amounts due under this Charter Party including costs of recovering same.

**9. Cancelling Clause**

~~(a) Should the Vessel not be ready to load (whether in berth or not) on the cancelling date indicated in Box 21, the Charterers shall have the option of cancelling this Charter Party.~~

(b) Should the Owners anticipate that, despite the exercise of due diligence, the Vessel will not be ready to load by the cancelling date, they shall notify the Charterers thereof without delay stating the expected date of the Vessel's readiness to load and asking whether the Charterers will exercise their option of cancelling the Charter Party, or agree to a new cancelling date.

Such option must be declared by the Charterers within ~~48~~ 24 running hours after the receipt of the Owners' notice. If the Charterers do not exercise their option of cancelling, then this Charter Party shall be deemed to be amended such that the seventh day after the new readiness date stated in the Owners' notification to the Charterers shall be the new cancelling date.

This document is a computer generated GENCON 1994 form printed by authority of BIMCO. Any insertion or deletion to the form must be clearly visible. In the event of any modification made to the pre-printed text of this document which is not clearly visible, the text of the original BIMCO approved document shall apply. BIMCO assumes no responsibility for any loss, damage or expense as a result of discrepancies between the original BIMCO approved document and this computer generated document.

# PART II

## "Gencon" Charter (As Revised 1922, 1976 and 1994)

~~The provisions of sub-clause (b) of this Clause shall operate only once, and in case of the Vessel's further delay, the Charterers shall have the option of cancelling the Charter Party as per sub-clause (a) of this Clause.~~

**10. Bills of Lading**

Bills of Lading shall be presented and signed by the Master as per the "Congenbill" Bill of Lading form, Edition 1994, without prejudice to this Charter Party, or by the Owners' agents provided written authority has been given by Owners to the agents, a copy of which is to be furnished to the Charterers. The Charterers shall indemnify the Owners against all consequences or liabilities that may arise from the signing of bills of lading as presented to the extent that the terms or contents of such bills of lading impose or result in the imposition of more onerous liabilities upon the Owners than those assumed by the Owners under this Charter Party.

**11. Both-to-Blame Collision Clause**

If the Vessel comes into collision with another vessel as a result of the negligence of the other vessel and any act, neglect or default of the Master, Mariner, Pilot or the servants of the Owners in the navigation or in the management of the Vessel, the owners of the cargo carried hereunder will indemnify the Owners against all loss or liability to the other or non-carrying vessel or her owners in so far as such loss or liability represents loss of, or damage to, or any claim whatsoever of the owners of said cargo, paid or payable by the other or non-carrying vessel or her owners to the owners of said cargo and set-off, recouped or recovered by the other or non-carrying vessel or her owners as part of their claim against the carrying Vessel or the Owners. The foregoing provisions shall also apply where the owners, operators or those in charge of any vessel or vessels or objects other than, or in addition to, the colliding vessels or objects are at fault in respect of a collision or contact.

**12. General Average and New Jason Clause**

General Average shall be adjusted in London unless otherwise agreed in Box 22 according to York-Antwerp Rules 1994 and any subsequent modification thereof. Proprietors of cargo to pay the cargo's share in the general expenses even if same have been necessitated through neglect or default of the Owners' servants (see Clause 2).

If General Average is to be adjusted in accordance with the law and practice of the United States of America, the following Clause shall apply: "In the event of accident, danger, damage or disaster before or after the commencement of the voyage, resulting from any cause whatsoever, whether due to negligence or not, for which, or for the consequence of which, the Owners are not responsible, by statute, contract or otherwise, the cargo shippers, consignees or the owners of the cargo shall contribute with the Owners in General Average to the payment of any sacrifices, losses or expenses of a General Average nature that may be made or incurred and shall pay salvage and special charges incurred in respect of the cargo. If a salving vessel is owned or operated by the Owners, salvage shall be paid for as fully as if the said salving vessel or vessels belonged to strangers. Such deposit as the Owners, or their agents, may deem sufficient to cover the estimated contribution of the goods and any salvage and special charges thereon shall, if required, be made by the cargo, shippers, consignees or owners of the goods to the Owners before delivery.".

**13. Taxes and Dues Clause**

(a) *On Vessel* -The Owners shall pay all dues, charges and taxes customarily levied on the Vessel, ~~crew/flag ad freight~~ howsoever the amount thereof may be assessed.
(b) *On cargo* -The Charterers shall pay all dues, charges, duties and taxes customarily levied on the cargo, howsoever the amount thereof may be assessed.
(c) *On freight* -Unless otherwise agreed in Box 23, taxes levied on the freight shall be for the Charterers' account.

**14. Agency**

In every case the Owners shall appoint ~~their own~~ Charterers' Agent both at the port of
loading and the port of discharge as per Box 18 and 19.

**15. Brokerage**

A brokerage commission at the rate stated in Box 24 on the freight, dead-freight and demurrage earned is due to the party mentioned in Box 24.
~~In case of non-execution 1/3 of the brokerage on the estimated amount of freight to be paid by the party responsible for such non-execution to the Brokers as indemnity for the latter's expenses and work. In case of more voyages the amount of indemnity to be agreed.~~

**16. General Strike Clause**

(a) If there is a strike or lock-out affecting or preventing the actual loading of the cargo, or any part of it, when the Vessel is ready to proceed from her last port or at any time during the voyage to the port or ports of loading or after her arrival there, the Master or the Owners may ask the Charterers to declare, that they agree to reckon the laydays as if there were no strike or lock-out. Unless the Charterers have given such declaration in writing (by telegram, if necessary) within 24 hours, the Owners shall have the option of cancelling this Charter Party. If part cargo has already been loaded, the Owners must proceed with same, (freight payable on loaded quantity only) having liberty to complete with other cargo on the way for their own account.
(b) If there is a strike or lock-out affecting or preventing the actual discharging of the cargo on or after the Vessel's arrival at or off port of discharge and same has not been settled within 48 hours, the Charterers shall have the option of keeping the Vessel waiting until such strike or lock-out is at an end against paying half demurrage after expiration of the time provided for discharging until the strike or lock-out terminates and thereafter full demurrage shall be payable until the completion of discharging, or of ordering the Vessel to a safe port where she can safely discharge without risk of being detained by strike or lock-out. Such orders to be given within 48 hours after the Master or the Owners have given notice to the Charterers of the strike or lock-out affecting the discharge. On delivery of the cargo at such port, all conditions of this Charter Party and of the Bill of Lading shall apply and the Vessel shall receive the same freight as if she had discharged at the original port of destination, except that if the distance to the substituted port exceeds 100 nautical miles, the freight on the cargo delivered at the substituted port to be increased in proportion.
(c) Except for the obligations described above, neither the Charterers nor the Owners shall be responsible for the consequences of any strikes or lock-outs preventing or affecting the actual loading or discharging of the cargo.

**17. War Risks ("Voywar 1993")**

(1) For the purpose of this Clause, the words:
(a) The "Owners" shall include the shipowners, bareboat charterers, disponent owners, managers or other operators who are charged with the management of the Vessel, and the Master; and
(b) "War Risks" shall include any war (whether actual or threatened), act of war, civil war, hostilities, revolution, rebellion, civil commotion, warlike operations, the laying of mines (whether actual or reported), acts of piracy, acts of terrorists, acts of hostility or malicious damage, blockades (whether imposed against all Vessels or imposed selectively against Vessels of certain flags or ownership, or against certain cargoes or crews or otherwise howsoever), by any person, body, terrorist or political group, or the Government of any state whatsoever, which, in the reasonable judgement of the Master and/or the Owners, may be dangerous or are likely to be or to become dangerous to the Vessel, her cargo, crew or other persons on board the Vessel.

(2) If at any time before the Vessel commences loading, it appears that, in the reasonable judgement of the Master and/or the Owners, performance of the Contract of Carriage, or any part of it, may expose, or is likely to expose, the Vessel, her cargo, crew or other persons on board the Vessel to War Risks, the Owners may give notice to the Charterers cancelling this Contract of Carriage, or may refuse to perform such part of it as may expose, or may be likely to expose, the Vessel, her cargo, crew or other persons on board the Vessel to War Risks; provided always that if this Contract of Carriage provides that loading or discharging is to take place within a range of ports, and at the port or ports nominated by the Charterers the Vessel, her cargo, crew, or other persons onboard the Vessel may be exposed, or may be likely to be exposed, to War Risks, the Owners shall first require the Charterers to nominate any other safe port which lies within the range for loading or discharging, and may only cancel this Contract of Carriage if the Charterers shall not have nominated such safe port or ports within 48 hours of receipt of notice of such requirement.

(3) The Owners shall not be required to continue to load cargo for any voyage, or to sign Bills of Lading for any port or place, or to proceed or continue on any voyage, or on any part thereof, or to proceed through any canal or waterway, or to proceed to or remain at any port or place whatsoever, where it appears, either after the loading of the cargo commences, or at any stage of the voyage thereafter before the discharge of the cargo is completed, that, in the reasonable judgement of the Master and/or the Owners, the Vessel, her cargo (or any part thereof), crew or other persons on board the Vessel (or any one or more of them) may be, or are likely to be, exposed to War Risks. If it should so appear, the Owners may by notice request the Charterers to nominate a safe port for the discharge of the cargo or any part thereof, and if within 48 hours of the receipt of such notice, the Charterers shall not have nominated such a port, the Owners may discharge the cargo at any safe port of their choice (including the port of loading) in complete fulfilment of the Contract of Carriage. The Owners shall be entitled to recover from the Charterers the extra expenses of such discharge and, if the discharge takes place at any port other than the loading port, to receive the full freight as though the cargo had been carried to the discharging port and if the extra distance exceeds 100 miles, to additional freight which shall be the same percentage of the freight contracted for as the percentage which the extra distance represents to

This document is a computer generated GENCON 1994 form printed by authority of BIMCO. Any insertion or deletion to the form must be clearly visible. In the event of any modification made to the pre-printed text of this document which is not clearly visible, the text of the original BIMCO approved document shall apply. BIMCO assumes no responsibility for any loss, damage or expense as a result of discrepancies between the original BIMCO approved document and this computer generated document.

## PART II

### "Gencon" Charter (As Revised 1922, 1976 and 1994)

the distance of the normal and customary route, the Owners having a lien on the cargo for such expenses and freight.

(4) If at any stage of the voyage after the loading of the cargo commences, it appears that, in the reasonable judgement of the Master and/or the Owners, the Vessel, her cargo, crew or other persons on board the Vessel may be, or are likely to be, exposed to War Risks on any part of the route (including any canal or waterway) which is normally and customarily used in a voyage of the nature contracted for, and there is another longer route to the discharging port, the Owners shall give notice to the Charterers that this route will be taken. In this event the Owners shall be entitled, if the total extra distance exceeds 100 miles, to additional freight which shall be the same percentage of the freight contracted for as the percentage which the extra distance represents to the distance of the normal and customary route.

(5) The Vessel shall have liberty:-

(a) to comply with all orders, directions, recommendations or advice as to departure, arrival, routes, sailing in convoy, ports of call, stoppages, destinations, discharge of cargo, delivery or in any way whatsoever which are given by the Government of the Nation under whose flag the Vessel sails, or other Government to whose laws the Owners are subject, or any other Government which so requires, or any body or group acting with the power to compel compliance with their orders or directions;

(b) to comply with the orders, directions or recommendations of any war risks underwriters who have the authority to give the same under the terms of the war risks insurance;

(c) to comply with the terms of any resolution of the Security Council of the United Nations, any directives of the European Community, the effective orders of any other Supranational body which has the right to issue and give the same, and with national laws aimed at enforcing the same to which the Owners are subject, and to obey the orders and directions of those who are charged with their enforcement;

(d) to discharge at any other port any cargo or part thereof which may render the Vessel liable to confiscation as a contraband carrier;

(e) to call at any other port to change the crew or any part thereof or other persons on board the Vessel when there is reason to believe that they may be subject to internment, imprisonment or other sanctions;

(f) where cargo has not been loaded or has been discharged by the Owners under any provisions of this Clause, to load other cargo for the Owners' own benefit and carry it to any other port or ports whatsoever, whether backwards or forwards or in a contrary direction to the ordinary or customary route.

(6) If in compliance with any of the provisions of sub-clauses (2) to (5) of this Clause anything is done or not done, such shall not be deemed to be a deviation, but shall be considered as due fulfilment of the Contract of Carriage.

**18. General Ice Clause**

*Port of loading*

(a) In the event of the loading port being inaccessible by reason of ice when the Vessel is ready to proceed from her last port or at any time during the voyage or on the Vessel's arrival or in case frost sets in after the Vessel's arrival, the Master for fear of being frozen in is at liberty to leave without cargo, and this Charter Party shall be null and void.

(b) If during loading the Master, for fear of the Vessel being frozen in, deems it advisable to leave, he has liberty to do so with what cargo he has on board and to proceed to any other port or ports with option of completing cargo for the Owners' benefit for any port or ports including port of discharge. Any part cargo thus loaded under this Charter Party to be forwarded to destination at the Vessel's expense but against payment of freight, provided that no extra expenses be thereby caused to the Charterers, freight being paid on quantity delivered (in proportion if lumpsum), all other conditions as per this Charter Party.

(c) In case of more than one loading port, and if one or more of the ports are closed by ice, the Master or the Owners to be at liberty either to load the part cargo at the open port and fill up elsewhere for their own account as under section (b) or to declare the Charter Party null and void unless the Charterers agree to load full cargo at the open port.

*Port of discharge*

(a) Should ice prevent the Vessel from reaching port of discharge the Charterers shall have the option of keeping the Vessel waiting until the re-opening of navigation and paying demurrage or of ordering the Vessel to a safe and immediately accessible port where she can safely discharge without risk of detention by ice. Such orders to be given within 48 hours after the Master or the Owners have given notice to the Charterers of the impossibility of reaching port of destination.

(b) If during discharging the Master for fear of the Vessel being frozen in deems it advisable to leave, he has liberty to do so with what cargo he has on board and to proceed to the nearest accessible port where she can safely discharge.

(c) On delivery of the cargo at such port, all conditions of the Bill of Lading shall apply and the Vessel shall receive the same freight as if she had discharged at the original port of destination, except that if the distance of the substituted port exceeds 100 nautical miles, the freight on the cargo delivered at the substituted port to be increased in proportion.

**19. Law and Arbitration**

* (a) This Charter Party shall be governed by and construed in accordance with English law and any dispute arising out of this Charter Party shall be referred to arbitration in London in accordance with the Arbitration Acts 1950 and 1979 or any statutory modification or re-enactment thereof for the time being in force. Unless the parties agree upon a sole arbitrator, one arbitrator shall be appointed by each party and the arbitrators so appointed shall appoint a third arbitrator, the decision of the three-man tribunal thus constituted or any two of them, shall be final. On the receipt by one party of the nomination in writing of the other party's arbitrator, that party shall appoint their arbitrator within fourteen days, failing which the decision of the single arbitrator appointed shall be final.

For disputes where the total amount claimed by either party does not exceed the amount stated in Box 25** the arbitration shall be conducted in accordance with the Small Claims Procedure of the London Maritime Arbitrators Association.

~~* (b) This Charter Party shall be governed by and construed in accordance with Title 9 of the United States Code and the Maritime Law of the United States and should any dispute arise out of this Charter Party, the matter in dispute shall be referred to three persons at New York, one to be appointed by each of the parties hereto, and the third by the two so chosen; their decision or that of any two of them shall be final, and for purpose of enforcing any award, this agreement may be made a rule of the Court. The proceedings shall be conducted in accordance with the rules of the Society of Maritime Arbitrators, Inc.~~

~~For disputes where the total amount claimed by either party does not exceed the amount stated in Box 25** the arbitration shall be conducted in accordance with the Shortened Arbitration Procedure of the Society of Maritime Arbitrators, Inc.~~

~~* (c) Any dispute arising out of this Charter Party shall be referred to arbitration at the place indicated in Box 25, subject to the procedures applicable there. The laws of the place indicated in Box 25 shall govern this Charter Party.~~

~~(d) If Box 25 in Part I is not filled in, sub-clause (a) of this Clause shall apply.~~

~~* (a), (b) and (c) are alternatives; indicate alternative agreed in Box 25.~~

~~** Where no figure is supplied in Box 25 in Part I, this provision only shall be void but the other provisions of this Clause shall have full force and remain in effect.~~

This document is a computer generated GENCON 1994 form printed by authority of BIMCO. Any insertion or deletion to the form must be clearly visible. In the event of any modification made to the pre-printed text of this document which is not clearly visible, the text of the original BIMCO approved document shall apply. BIMCO assumes no responsibility for any loss, damage or expense as a result of discrepancies between the original BIMCO approved document and this computer generated document.

# RIDER CHARTER PARTY

**Clause 20.**
Owners are not allowed to sublet this Charter Party to third party.

**Clause 21.**
Vessel's holds to be steel floored. The vessel to be presented with clean, dry holds to Charterers'/Inspector's satisfaction. Any cleaning and/or drying to be done in Owners' time and at Owners' expenses. In case of disagreement as to condition of holds, the Master/Owners to arrange an independent surveyor whose decision shall be binding on both parties.

If after berthing the vessel is found not to be ready in all respects to load/discharge, the actual time lost until the vessel is in fact ready to load/discharge is not to count. In case vessel is not loadready within 24 hours Charterers has the option to order the vessel to anchorage. Time and expenses to be for Owners account. Owners undertake that vessel's hatch covers are watertight. If necessary, Owners to arrange/pay for Ramneck tape in order to avoid leakage into cargo.

**Clause 22.**
(A) Quantity of cargo loaded on board the vessel shall be determined by draft survey carried out by a qualified mutually acceptable surveyor at Charterers' expense.
(B) The vessel is to be presented for loading in such trim and condition as to permit calculation of the vessel's light displacement. Vessel to furnish calibration scales for all tanks, including fore- and aft peak, double bottom tanks and deeptanks. Vessel is to furnish capacity plans, displacement scales, dead-weight scale and hydrostatic information, all certified by the Master as to correctness at the port of loading. Plimsoll marks at midship and draught marks at the port and starboard sides bow and stern to be clearly cut and marked on shell plating. Additional cost and time lost caused by vessel's failure to comply shall be for Owners' account.

**Clause 23.**
Opening/closing of hatches at loading/discharging port to be effected by Owners' crew and in Owners' time, if local regulations permit. Time used not to count. If shore regulations do not permit vessel's crew to perform these operations then shore hands to be employed by Charterers for their account and time.

**Clause 24.**
Overtime to be for account of party ordering it. Overtime for officers and crew always to be for Owners' account.

**Clause 25.**
Owners to put agents in loading/discharging ports in funds prior leaving port for ship's ordinary disbursements. Failing this, such advances will be deducted from the freight.

**Clause 26.**
Master/Owners to give notice on fixing and thereafter 15/14/7/5/3 days approximate and 48/24 hours definite notice of arrival of vessel at load port to load port agent and to M.K. Shipping ApS by e-mail: mail@mkshipping.dk or by fax: +45-4550 5490. Master/Owners to give 7/5/3 days approximate and 48/24 hours definite notice of arrival of vessel at discharge port to M.K. Shipping ApS and to discharge port agent.

Clause 27.
The Stevedores, although appointed by Charterers, Shippers or Receivers or their agents to be under the direction and control of the Captain. Charterers, Shippers or Receivers shall not be responsible for the act of default of the stevedores at the loading and discharging port(s).

All claims for damages caused by Stevedores to be settled directly between Owners and Stevedores at loading and discharging port. Master to notify Stevedores of damages, if any, in writing within 24 hours after occurrence, but always before departure of the vessel from the berth. Otherwise Stevedores not to be held liable. If Owners are unable to get prompt settlement from Stevedores, Charterers are to render all possible assistance in obtaining settlement. Any time for repair of stevedore damages shall count as laytime.

Clause 28.
No cargo shall be loaded into deeptanks, bunkers and bridge spaces, tanks or any place not easily accessible to grabs, however, the Master may require cargo to be loaded in such places for the purpose of stability of the vessel and any expenses over and above the cost of normal loading, trimming and discharging shall be for Owners' account. Extra time used for loading and discharging into and/or from such places shall not count. The shippers are allowed to use forklifts or small bulldozers for trimming of the cargo in accordance with vessel's tanktop strength. Bulldozers with steel wheels only allowed on a layer of scrap.

Clause 29.
Vessel to supply at all time sufficient power for winches, cranes and all vessels gear in good working order during day and night, free of expense to Charterers. Charterers have free use of vessels light as on board for night work. Vessel to supply at all time, free of charge, electricity/power to drive Charterers grabs if shore power fails. (440 volt 3 phase 60 cycles and 40 kva per crane from the power supply panel in each crane-house). Supply subject to all wire/installation/cable to be supplied and installed and operated at Charterers time and expense. Charterers also to have free use of vessels compressors as on board and shore cranes max 1 per hold both ends.

Owners/Master to allow Stevedores/Shore Crane drivers to operate vessels gear provided same are allowed by local authorities.

Unless caused by Charterers servants/stevedores, time lost due to breakdown or power failure not to count as laytime even if vessel already on demurrage. However, in the event of the breakdown of any of vessels cranes and other ship loading equipment necessary for the loading, shifting or discharging of the cargo at any port of loading or discharge time shall be reduced in proportion to the number of holds/hatches gear/cranes in which cargo operation were proceeding at the time of the breakdown. Holds gear/crane in which cargo operation have already been completed at the relevant port of loading or discharging shall not be taken into consideration when calculating the proportion pro rata by which time shall be reduced.

Clause 30.
Any extra insurance premium on the cargo levied by reason of vessel's age to be borne by the Charterers.

Clause 31.
If shifting required, all shifting expenses to be for Charterers' account and shifting time to count as laytime. Vessel shall be warped as required. Such warping shall be for Charterers' account and time so used shall count. Charterers are allowed to shift the vessel alongside the pier, if needed, without any additional costs.

**Clause 32.**
Balance freight and settlement of demurrage/despatch, if any, with relevant documentation incl. SOF, NOR and Time Sheet, to be tendered within maximum 15 working days after completion of discharge.

Demurrage occurred at load/discharge to be settled per intake/paid weight.

**Clause 33.**
Master/Owners to sign Bills of Lading 'Clean on Board'. Master/Owners have the right to reject any cargo, which may cause remarks into Bills of Lading and Charterers to provide new 'clean' cargo. In case of demur-rage at loading/discharging the Owners/Master have no right to clause the Bills of Lading with this claim.

**Clause 34.**
Owners warrant that in current Charter Party vessel shall not change ownership and/or class and/or flag without Charterers' written consent. Owners warrant that vessel is fully P&I covered and will be so maintained for the duration of this Charter Party. Owners warrant vessel's H&M shall be fully maintained during this Charter Party. Owners confirm clear space in hold(s) without obstructions and without protruding frames which could hinder/delay operations.

Owners guarantee that the vessel is not intended for break-up upon completion of the engagement entered into, under this Charter Party. Should Owners, contrary to the above guarantee, sell the vessel for break-up before she has been completely discharged and released by the Receivers of the cargo, then Owners to pay whatever insurance penalty that might be assessed against the Charterers forthwith.

**Clause 35 – Bimco Standard ISM clause.**
From the date of coming into force of the International Safety Management (ISM) Code in relation to the vessel and thereafter during the currency of this Charter Party, the Owners shall procure that both the vessel and 'the Company' (as defined by the ISM Code) shall comply with the requirements of the ISM Code. Upon request the Owners shall provide a copy of the relevant Documents of Compliance (DOC) and Safety Management Certificate (SMC) to the Charterers. Except as otherwise provided in this Charter Party, loss, damage, expense or delay caused by failure on the part of the Owners or 'the Company' to comply with the ISM Code shall be for Owners' account.

**Clause 36.**
In the event the vessel is found not to be in compliance with the ISM Code and the competent official body or authority having jurisdiction prevents the vessel from conducting cargo operations and force the vessel to leave port without loading or unloading cargo, the Charter Party shall be cancelled with prejudice. Any time lost as a result of delays in Owners procuring vessel's compliance documentation shall not count as laytime or time on demurrage.

**Clause 37.**
Terms and conditions of this Charter Party to be treated strictly confidential and are not to be disclosed to any third party.

Clause 38 – vessels description:
- mv artemida
ex 'free fighter'
lib flag blt 1982
class lr / ice class 3ss
38,850 mt on 11,575 m / tpc 46,545
46,070.6 cbm gr
1/ 5884.4 m3
2/ 6862.9 m3
3/ 6740.6 m3
4/ 6740.6 m3
5/ 6740.6 m3
6/ 6726.6 m3
7/ 6374.9 m3
7 hh 5/28 mts swl
ha dims
no.1:    10.90 x 12.77
no.2:    12.40 x 12.77
nos. 3/7: all 12.77 x 12.77
macgregor hatch covers
g/n/t 23596/14790
abt
abt 12,50 knts on abt 29mts ifo180 + abt 3nts mgo - laden
abt 12,50 knts on abt 27mts ifo180 + abt 3nts mgo - ballast
pd abt 3.0 t mgo idle
pcw abt 4.5 t mgo
all dets abt

all details are given in good faith but wog

- vsl will be singledecker and suitble to discharge scrap cgo.

- electricty will be 380/440 v, 79 amper, 37/44 kw, 50/60 hz for each shore grab.

Clause 39.
Charterers undertake that loading of first layer of scrap not to be released until touching tanktop and not to be dumped/dropped during loading. First layer of scrap, shredded if any, to be loaded first, and at height and to be evenly stowed/trimmed to satisfaction of master before loading balance of cargo.

Clause 40.
Notice of Readiness to be given at berth. Notice of Readiness may only be tendered if vessel is loadready at berth, unless the berth is occupied. At discharge only Notice of Readiness can be tendered within office hours Monday to Sunday 08.00–17.00 hours, whether in port or not, whether in berth or not, whether in free pratique or not, whether customs cleared or not. No notice to be accepted before Lay/Can. At discharge time to count next working day at 08.00 hours after Notice of Readiness has been accepted. At both ends time actually used before commencement of laytime not to count.

Clause 41.
Vessel to furnish a certified calibration scale for all tanks, including fore and aft peak and double bottom tanks, Plimsoll marks, amidships and draft marks on port and starboard side, bow and stern midship to be clearly cut and marked on shell plating. Vessel to furnish Capacity Plan, Displacement Scale and

Deadweight Scale and same to be certified by Master as to the correctness at the time of loading. Charterers privilege to make Photostat copy of the displacement scale used for the initial weighing. The vessel will not paint any of her draft marks from the start of loading until the completion of discharge. The cargo intake to be established by means of draft survey and the final quantity to be inserted on Bs/L to be as per draft survey figures and the Owners to be responsible for the quantity loaded on his vessel as per the quantity shown on the Bs/L.

Vessel is not to take on, release or switch from one tank to another compartments to another any ballast, fresh water or fuel oil while oil surveyor is taking draft and/or tank soundings.

**Clause 42.**
~~In the event of vessel's crane(s) breakdown, time to count pro-rata to the number of vessel's cranes available, provided all cranes required at the same time. In case broken-down crane(s) are not required for discharge operations, no time to be deducted in lieu until such time as they are required.~~

In the event of vessel's crane(s) breakdown, Charterers to have the option of employing shore cranes at Owners' expense which subject to Owners' approval and time to count ~~same way as if vessel's gear is working normally, pro rata~~ if smaller crane than vessels gear/crane.

Charterers' right to unberth the vessel due to major gear breakdown in case Owners fail to employ shore crane at least within 36 consecutive hours. Shifting time and expenses to be for Owners' account and time ceases until repair is completed. Reberthing, shifting time and expenses to be for Owners' account.

**Clause 43.**
Owners to comply with any law or regulation concern oil pollution and Owners' financial responsibility thereof.

**Clause 44.**
In the event of labour boycott and any other discrimination against the vessel because of previous trade and/or flag and/or crew, all time lost and expenses incurred shall be for Owners' account.
Owners to guarantee that the employment of the crew to be covered by social security which is equivalent to ITF authorities.

**Clause 45.**
Owners, disponent Owners or Master to submit a written dead freight claim to shippers if shippers fail to load the vessel upto full and complete with initially declared stowage factors of each grade, even if the vessel fixed on lumpsum basis.

**Clause 46.**
Charterers have option to load and/or discharge ex/into barges overside and/or coaster vessels.

**Clause 47.**
95% payable latest within 3 banking days after signing/releasing Bills of Lading marked 'Freight payable as per Charter Party' less commission, into Owners' nominated bank account, free of bank charges. Freight deemed earned on cargo being loaded, discountless/non returnable, vessel and/or cargo lost or not lost.

If Bills of Lading are marked 'freight prepaid', then 100% freight to be paid and original Bills of Lading are to be kept in custody of the loadport agents until freight has been received by Owners' bankers.

**Clause 48 - ISPS Clause for Voyage Charter Parties**

(A) (i) From the date of coming into force of the International Code for the Security of Ships and of Port Facilities and the relevant amendments to Chapter XI of SOLAS (ISPS Code) in relation to the Vessel, the Owners shall procure that both the Vessel and "the Company" (as defined by the ISPS Code) shall comply with the requirements of the ISPS Code relating to the Vessel and "the Company". Upon request the Owners shall provide a copy of the relevant International Ship Security Certificate (or the Interim International Ship Security Certificate) to the Charterers. The Owners shall provide the Charterers with the full style contact details of the Company Security Officer (CSO).

(ii) Except as otherwise provided in this Charter Party, loss, damage, expense or delay, excluding consequential loss, caused by failure on the part of the Owners or "the Company" to comply with the requirements of the ISPS Code or this Clause shall be for the Owners' account.

(B) (i) The Charterers shall provide the CSO and the Ship Security Officer (SSO)/Master with their full style contact details and any other information the Owners require to comply with the ISPS Code.

(ii) Except as otherwise provided in this Charter Party, loss, damage, expense, excluding consequential loss, caused by failure by such failure shall be compensated at the demurrage rate.

(C) Provided that the delay is not caused by the Owners' failure to comply with their obligations under the ISPS Code, the following shall apply:

(i) Notwithstanding anything to the contrary provided in this Charter Party, the Vessel shall be entitled to tender Notice of Readiness even if not cleared due to applicable security regulations or measures imposed by a port facility or any relevant authority under the ISPS Code.

(ii) Any delay resulting from measures imposed by a port facility or by any relevant authority under the ISPS Code shall count as laytime or time on demurrage if the Vessel is on laytime or on demurrage. If the delay occurs before laytime has started or after laytime or time on demurrage has ceased to count, it shall be compensated by the Charterers at the demurrage rate.

(D) Notwithstanding anything to the contrary provided in this Charter Party, any additional costs or expenses whatsoever solely arising out of or related to security regulations or measures required by the port facility or any relevant authority in accordance with the ISPS Code including, but not limited to, security guards, launch services, tug escorts, port security fees or taxes and inspections, shall be for the Charterers' account, unless such costs or expenses result solely from the Owners' negligence. All measures required by the Owners to comply with the Ship Security Plan shall be for the Owners' account.

(E) If either party makes any payment which is for the other party's account according to this Clause, the other party shall indemnify the paying party.

**Clause 49.**

Vessel will not call Greek Cyprus before discharge and owner/manager and vessels certificates will not be related to Greek Cyprus.

**Clause 50.**

Free qwct dues at Germany.

Exhibit 2

file:///C:/Documents and Settings/bomb/Local Settings/Temporary Internet Files/OLK...

| Euro-Scrap Alliance B.V. | Atlas Shipping A/S |
|---|---|
| c/o M.K. Shipping Aps | 11, Sundkaj |
| DK-2840 Holte | 2100 Copenhagen |
| Denmark | Denmark |

tel: +45 3927 9400
fax: +45 3927 9402
telex: 22200 atlas dk
atlas@atlas-shipping.com
www.atlas-shipping.com

| Date | 23. November 2007 |
|---|---|

## Freight Recap

**m.v. ARTEMIDA - C/P 16 August 2007**

| | |
|---|---|
| Freight | |
| 26.586,8950 mt scrap at USD 51,000 | 1.355.931,65 |
| Deadfreight | |
| 1.531,1500 mt scrap at USD 51,00 | 78.088,65 |
| Demurrage at ISKENDERUN | 473.282,75 |
| Despatch at HAMBURG | (1.703,13) |
| Commission: | |
| 2,50 % on freight, demurrage, dead freight | (47.682,58) |
| 2,50 % on freight, demurrage, dead freight | (47.682,58) |
| Payment 12-09-07 | (1.290.618,26) |
| **Balance in Owners favour** | 519.616,50 |

E.&O.E.

We ask you kindly to transfer above balance with value 23 November 2007 to:

Danske Bank,
Holmens Kanal 2,
DK-1090 Copenhagen K,
Denmark
SWIFT CODE: DABADKKK
Credit Account No. 3000 3001 356275
Iban No: DK41 3000 3001 3562 75
Beneficiary: Atlas Shipping A/S
Corresponding bank: Bank of America N.Y., SWIFT I: BOFAUS3N